IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

BUZZBALLZ, LLC,                          §
                                         §
                    *Plaintiff,*          §          SA-24-CV-00692-JKP-ESC
                                         §
vs.                                      §
                                         §
THE BEVERAGE RANCH, LLC,                 §
                                         §
                    *Defendant.*          §
                                         §
                                         §

## CLAIM CONSTRUCTION ORDER

Before the Court are the Parties' claim construction briefs: Defendant The Beverage
Ranch, LLC's ("Beverage Ranch") Opening Claim Construction Brief [#20] and Plaintiff
BuzzBallz, LLC's ("BuzzBallz") Responsive Claim Construction Brief [#32]. This case was
referred to the undersigned for all non-dispositive pretrial proceedings [#8]. The undersigned has
authority to enter this Order pursuant to 28 U.S.C. § 636(b)(1)(A). The undersigned held the
*Markman* hearing on June 13, 2025, and now informs the Parties of the final constructions for
the disputed terms.[1]

### I.    Background

BuzzBallz asserts U.S. Patent Nos. 12,037,162 (the '162 Patent) and 11,338,955 (the
'955 Patent).

---

[1] Though Defendant's Claim Construction Brief asks the Court to construe twenty terms
(twelve in the '162 Patent and eight in the '955 Patent), during the Markman hearing, Defendant
presented argument on just five terms.

A.     <u>**The '162 Patent**</u>

The '162 Patent teaches an "[a]ppartus and method(s) according to which a first container lid is sealingly engaged against a container body." ('162 Patent [#12-2], at Abstract.) The container body is then stacked onto a second container lid. ('162 Patent [#12-2], at Abstract.) The '162 Patent contains twenty-two claims directed towards containers. ('162 Patent [#12-2], at 28–36.)

B.     <u>**The '955 Patent**</u>

The '955 Patent teaches a "container for storing a liquid or a solid [which] may include a container body having a container side wall and a container bottom and a container lid having a pop top arm to pivot and cooperate with a weakened area to provide access to the interior of the container body." ('955 Patent [#12-1], at Abstract.) The container body "may be shaped as a truncated spherical body." ('955 Patent [#12-1], at 2:21–22.) The '955 Patent contains twenty-one claims directed towards containers. ('955 Patent [#12-1], at 4–6.)

## II.     <u>Legal Standard</u>

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation and citation omitted). The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer

or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365–66 (Fed. Cir. 2012). The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365 (citations omitted).

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[B]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of plain-and-ordinary meaning may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

A patent's specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "Although the specification may aid the court in interpreting the meaning of disputed claim language . . . particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988) (citation omitted). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318, 1322. Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.* at 1318.

### III.  <u>Analysis</u>

The undersigned finds that the below constructions are appropriate based on the record, the law, and the parties' arguments. To streamline the analysis, the disputed claims are grouped based on the arguments made by Defendant in support of its proposed constructions.

**A.     Claims For Which No Exception Is Invoked and No Dictionary Definition Is Argued**

| Disputed Claim | Beverage Ranch's Proposed Construction | BuzzBallz's Proposed Construction | The Court's Construction |
|---|---|---|---|
| **side wall**<br><br>'162 Patent; Claims 1–6, 8, 10, 15–19, 21 | One of two external surfaces forming either the container body or the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **first side wall**<br><br>'162 Patent; Claims 1–6, 8, 10, 15–19, 21 | The external side surface forming the container body | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **second side wall**<br><br>'162 Patent; Claims 1, 10 | The external side surface forming the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **top wall**<br><br>'162 Patent; Claims 1, 8, 10, 21 | The top portion of the container lid comprising the central portion and the outer edge portion of the container lid, wherein the top wall is connected to the second side wall at the end portion of the second sidewall | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **external region**<br><br>'162 Patent; Claims 1, 7, 8, 10, 20, 21 | An exterior area of the lid defined by the radially-inwardly-facing external surface and the central portion of the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |

**Competing Positions**.  Defendant contends that based on claims 1 and 10, the specification of the '162 Patent, and its expert's opinion, a POSITA would understand the terms "side wall," "first side wall," "second side wall," "top wall," and "external region" to have the meanings set forth in the table above. (Def. Claim Constr. Br. [#20], at 16, 26–27.) Dr. Sjong's opinions regarding these terms, which each restate the Defendant's proposed constructions, are

solely supported by the '162 Patent itself. (Decl. of Angele Sjong, Ph.D. [#21-30], ¶¶ 9 n.1, 10 n.2, 14 n.6, 15 n.7, 17 n.9.)

Plaintiff argues in response that Defendant failed to provide any argument or evidence to overcome the heavy presumption against these terms being construed beyond their plain-and-ordinary meanings.

**Rulings**.    The undersigned agrees with Plaintiff that these claim terms should be construed according to their plain-and-ordinary meanings. First, the "heavy presumption" is that terms should be construed according to their plain and ordinary meaning. *Azure Networks*, 771 F.3d at 1347. Second, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *See Thorner*, 669 F.3d at 1365. Third, Defendant did not argue that these are scenarios in which the Court must construe a term's plain-and-ordinary meaning. *See O2 Micro*, 521 F.3d at 1361.

Moreover, the undersigned finds that Defendant's argument—that a POSITA would define these terms in line with their proposed construction—to be circular. A term's meaning to a POSITA is exactly what the plain-and-ordinary meaning would *already* incorporate. *Phillips*, 415 F.3d at 1313. Furthermore, Defendant's expert, Dr. Angele Sjong, Ph.D., provided no explanation or analysis for why her proposed constructions (in the chart above) are what a POSITA would understand. The undersigned therefore assigns no weight to Dr. Sjong's testimony. *See Phillips*, 415 F.3d at 1318 (stating the rule that "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court"); *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1361 (Fed. Cir. 2013) (holding that an

6

expert failed to support his assertions by not explaining *why* a POSITA would understand a term in a particular matter).

Therefore, for the reasons described above, the undersigned finds that the terms "side wall," "first side wall," "second side wall," "top wall," and "external region" in the '162 Patent should have their plain-and-ordinary meanings and will not construe them.

**B.    Claims For Which No Exception Is Invoked and a Dictionary Definition and/or Extrinsic Evidence Is Cited**

| Disputed Claim | Beverage Ranch's Proposed Construction | BuzzBallz's Proposed Construction | The Court's Construction |
|---|---|---|---|
| **neck**<br><br>'162 Patent; Claims 1, 7, 8, 10, 20, 21 | The narrow part of a container forming the container's mouth wherein spiral threads on the neck engage the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **lid**<br><br>'162 Patent; Claims 1, 7, 8, 10, 12–14, 20, 21 | A movable cover or top for a container comprised of a side wall connected to a top wall | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **radially-inwardly-facing external surface**<br><br>'162 Patent; Claims 1, 7, 8, 10, 20, 21 | A curved outer surface of the lid that faces towards the center of the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **axially**<br><br>'162 Patent; Claims 1–4, 10, 15–17 | In the direction of an imaginary straight line that passes through the center of an object | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **opposite**<br><br>'162 Patent; Claims 1, 10 | Set against and in a contrary position or direction | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **extending**<br><br>'955 Patent; Claims 1, 10, 21 | Stretching out | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **adjacent** | Having a common border or edge with the | No construction necessary, plain-and- | No construction necessary, plain- |

| '955 Patent; Claims 1, 6, 10, 18, 21 | absence of anything in between | ordinary meaning | and-ordinary meaning |
|---|---|---|---|
| **uninterruptedly**<br><br>'955 Patent; Claims 1, 10, and 21 | Not interrupted, stopped, or blocked | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **side wall**<br><br>'955 Patent; Claims 1, 6, 10, 18, 21 | The external surface of the container body, excluding the neck, shoulder, and base | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |

**Competing Positions.**  As to the terms "neck," "lid," "radially-inwardly-facing external surface," "axially," and "opposite" in the '162 Patent, Defendant contends that based on claims 1 and 10, the specification of the '162 Patent, its expert's opinions, and a general (not technical) dictionary, a POSITA would understand these terms to have the above-listed meanings. (Def. Claim Constr. Br. [#20], at 17, 26–28.) As to the terms "extending," "adjacent," "uninterruptedly", and "side wall"[2] in the '955 Patent, Defendant contends that based on claims 1, 10, and 21, the specification of the '955 Patent, the prosecution history of the '296 Patent,[3] its expert's opinions, and a general dictionary, a POSITA would understand these to have the above-listed meanings. (Def. Claim Constr. Br. [#20], at 33, 42.)

Dr. Sjong's opinions restate Defendant's suggested constructions for each term. Defendant's Claim Construction Brief and Dr. Sjong's opinions regarding these terms cite for support each term's general dictionary definition[4] in *Webster's New Twentieth Century*

---

[2] Defendant and its expert do not cite a dictionary definition of "side wall." Defendant uses the terms "side wall" and "sidewall" interchangeably. The undersigned uses "side wall," as that it how it is spelled in the claims of the '955 Patent.

[3] U.S. Patent No. 10,604,296 is a parent patent to the '955 Parent. ('955 Patent [#12-1], at Related U.S. Application Data.)

[4] They do not cite a definition for the term "side wall." For the term "radially-inwardly-facing external surface," they cited to the definitions of "radial curves" and "inwardly." (Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 16 n.8.) For the term "axially," they cited the definitions of

*Dictionary Unabridged* (2d ed. 1983).[5] (Def. Claim Constr. Br. [#20], at 17 n.17, 26 n.43, 27 n.46, 27 n.48, 28 n.50, 42 n.92, 42 n.93, 46 n.105; Decl. of Angele Sjong, Ph.D. [#21-30], ¶¶ 11 n.3, 12 n.4, 13 n.5, 16 n.8, 18 n.10, 26 n.20, 27 n.21.) Finally, Defendant's Claim Construction Brief cites to images in the extrinsic record as support for its proposed construction of certain terms. It relies upon an image of a bottle in the extrinsic record as support for its construction of "side wall."[6] (Def. Claim Constr. Br. [#20], at 34; Appendix [#21-17], at app. 2998.) It relies upon three images in the extrinsic record for its construction of "neck" in the '162 Patent.[7] (Def. Claim Constr. Br. [#20], at 17–18; Appendix [#21-16], at app. 2991–92; Appendix [#21-19], at app. 3014.)

**Rulings.** Again, as with the previous terms in Section III(A), *supra*, the undersigned agrees with Plaintiff that these terms should be construed according to their plain-and-ordinary meanings, and for the same reasons: (1) the heavy presumption that terms should be construed according to their plain and ordinary meaning; (2) Defendant's failure to expressly allege

---

"axially" and "axis." (Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 12 n.4.) For the other listed terms, they cited to the definition of the term itself.

[5] For the term "adjacent," Defendant and Defendant's expert also cite to the *Merriam-Webster* online dictionary's and *Vocabulary.com*'s definitions. (Def. Claim Constr. Br. [#20], at 42 n.93; Appendix [#21-14], at app. 2979; Appendix [#21-15], at app. 2988; Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 27 n.21.) For the term "uninterruptedly," Defendant did not cite to *Webster's*; rather, it cited to the online *Oxford Learner's Dictionary* definition, and Defendant's expert cited to the *Merriam-Webster* online dictionary's definition. (Def. Claim Constr. Br. [#20], at 42 n.94; Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 28 n.22; Appendix [#21-29], at app. 3052.)

[6] The image depicted to show a bottle's "side wall" is from a company called Berlin Packaging's website. (Appendix [#21-17], at app. 2998.)

[7] The first two images, from a company called Aaron Packaging Inc., are labeled depictions of a bottle, with one image zoomed in on the top of the bottle; the third image is also a labeled depiction of the top of a bottle. (Appendix [#21-16], at app. 2991–92; Appendix [#21-19], at app. 3014.)

lexicography or disclaimer, the only two exceptions to this general rule; (3) Defendant has not argued that these are scenarios in which the Court must construe a term's plain-and-ordinary meaning; and (4) Defendant's argument that the Court should adopt its proposed construction because it is what a POSITA would understand the term to mean is both conclusory and circular.

Additionally, the undersigned does not assign any weight to Defendant's expert's opinion on these terms, which are unsupported other than relying on the *Webster's New Twentieth Century Dictionary Unabridged* (2nd ed. 1983) or another general dictionary. General dictionaries such as *Webster's* may be used to clarify the ordinary meaning of claim language. *See Phillips*, 415 F.3d at 1314 (stating that "general purpose dictionaries may be helpful" when "claim construction . . . involves little more than the application of the widely accepted meaning of commonly understand words"). The expert provided no meaningful reason for using the 1983 edition of *Webster's* that she cites in her construction of these terms, and there is no obvious reason why this would be the appropriate dictionary to use in this case.[8] In any event, the expert's use of general-dictionary definitions cuts *against* concluding that these terms must be construed by the Court and instead supports the argument that the terms should be given their ordinary meaning.

Lastly, the undersigned does not assign any weight to sources cited by Defendant or Dr. Sjong in the extrinsic record as support for Defendant's proposed construction of the terms "neck" in the '162 Patent or "side wall" in the '955 Patent. The images and website cited by the expert are apparently from private companies, and they have **no** known connection to the parties or the patents at issue in this case. *See Phillips*, 415 F.3d at 1318 (summarizing that extrinsic

---

[8] Dr. Sjong stated at the *Markman* hearing that Defense counsel provided her with the definitions from the 1983 *Webster's New Twentieth Century Dictionary Unabridged*. When asked who decided to use that particular dictionary, she responded that she did not recall. She stated at the hearing that she thinks it is a "good" and "useful" "general dictionary."

evidence is "less reliable than the patent and prosecution history," in part because "there is a virtually unbounded universe of potential extrinsic evidence of some marginal relevance that could be brought to bear on any claim construction question"). Defendant did not explain why these sources are reliable and should be given any weight by the Court. Moreover, at the *Markman* hearing, Defendant's expert also could not provide a justification for relying upon the images from the extrinsic record depicted in Defendant's Claim Construction brief.

Therefore, for the reasons described above, the undersigned finds that the terms "neck," "lid," "radially-inwardly-facing external surface," "axially," and "opposite" in the '162 Patent, and "extending," "adjacent," "uninterruptedly," and "side wall" in the '955 Patent, should have their plain-and-ordinary meanings and will not construe them.

### C.    Claims For Which Defendant Invokes an Exception

| Disputed Claim | Beverage Ranch's Proposed Construction | BuzzBallz's Proposed Construction | The Court's Construction |
|---|---|---|---|
| **internal region**<br><br>'162 Patent; Claims 1, 10 | An interior area of the lid defined by the combination of the second side wall, the top wall, and the security band wherein the end portion of the neck is received so the internal threads of the container lid are engaged with the external threads of the container neck | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **internal threads**<br><br>'162 Patent; Claims 1 and 10 | Internal ridges extending spirally along the interior of the second side wall that engage with the external ridges of the container neck | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **truncated**<br><br>'955 Patent; Claims | To cut off and replace with a flat, level or even surface | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary |

| 1, 10, 21 | | | meaning |
|---|---|---|---|
| **spherical**<br><br>'955 Patent; Claims 1, 10, 21 | Shaped like a sphere or globe wherein the surface is equally distant from the center at all points | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **neck**<br><br>'955 Patent; Claims 1, 6, 10, 18, 21 | The narrow part of a container forming the container's mouth wherein spiral threads on the neck engage the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **lip**<br><br>'955 Patent; Claims 6, 18 | The outer upper edge of the neck that engages with the lid to provide a seal for the contents of the container | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |

### i.    "Internal Region"

**Competing Positions**.    Defendant argues that the lexicographer exception applies to "internal region." (Def. Claim Constr. Br. [#20], at 23–24, 28.) According to Defendant, the inventor of the '162 Patent "specifically defined the term in the specification, which provides that 'the side wall 185, the top wall 190, and the security band 210, in combination, *define an internal region* 215.'" (Def. Claim Constr. Br. [#20], at 24 (citing '162 Patent [#12-2], at 7:26–28, 14:43–45) (emphasis added).) The parent patents to the '162 Patent,[9] which are specifically incorporated by reference into the '162 Patent, also include this statement in their specifications. (Def. Claim Constr. Br. [#20], at 24.) Dr. Sjong's opinion regarding the meaning of "internal region" restates Defendant's proposed construction; in support of it, she cites to the '162 Patent itself and its parent patents. (Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 19.) At the *Markman* hearing, Defendant pointed to the meaning of "define" in *Black's Law Dictionary*.

---

[9] The parent patents are U.S. Patent Nos. 11,975,889 and 11,738,903. ('162 Patent [#12-2], at Related U.S. Application Data.)

Plaintiff argues in response that Defendant's argument fails for three reasons. (Pl. Claim Constr. Br. [#32], at 9–11.) First, it argues that Defendant does not explain how patentee acted as her own lexicographer. Second, Plaintiff asserts that the portions of the specification that Defendant appears to be relying on for lexicography do not evince a clear intent to redefine. Rather, Plaintiff claims that to the extent Defendant is asserting the mere use of the word "define" by the patentee always means the patentee is engaging in lexicography, that is incorrect. According to Plaintiff, here, the patentee was using the word "define" in the sense of "form" or "establish," and that this is "not lexicography but simply explaining what creates the 'internal region' . . . according to its plain and ordinary meaning." (Pl. Claim Constr. Br. [#32], at 10.) Third, Plaintiff argues that Defendant's proposed construction for "internal region" includes limitations inconsistent with the alleged lexicography. For instance, the proposed construction refers to the "internal threads of the container lid," though the phrase "the side wall 185, the top wall 190, and the security band 210, in combination, define an internal region 215" does not mention internal threads.

**Ruling**.  The undersigned agrees with Plaintiff that Defendant has not demonstrated that the patentee (Plaintiff) clearly intended to act as a lexicographer. *See Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016) (quoting *Trivascular, Inc.v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016)) (stating the rule that the party seeking to invoke an exception to the presumption in favor of plain-and-ordinary meaning has the burden of proving the exception applies). To act as her own lexicographer, the patentee must have "clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and "clearly express[ed] an intent to [define] the term." *Thorner,* 669 F.3d at 1365 (citations and internal quotations omitted). Here, the word "define" could have been intended to mean *either* Plaintiff's

asserted meaning or Defendant's asserted meaning, and the more natural reading of "defined" in the context of the sentence is Plaintiff's.

Defendant's argument at the *Markman* hearing that the Court should read the word "defined" in accordance with *Black's Law Dictionary*'s is not persuasive. It is unlikely that a patent inventor would rely upon *Black's Law Dictionary*—rather than a technical dictionary—when writing their specification or that a POSITA would use this dictionary in aiding their understanding of the plain-and-ordinary meaning of the word.

Additionally, Defendant appeared to claim at the *Markman* hearing that "internal region" needed to be construed by the Court because of how Plaintiff allegedly depicted the term in its infringement contentions (i.e., that Plaintiff did not give "internal region" its plain-and-ordinary meaning in its infringement contentions). **But infringement contentions are not at issue at this stage of the case.** *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) (citing *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010)) ("[T]here are limits to the court's duties at the claim construction stage. For example, courts should not resolve questions that do not go to claim scope, but instead go to infringement . . . ."). Thus, Defendant has not met its burden of showing that the patentee "clearly express[ed]" an intent to define "internal region," and the heavy presumption in favor of plain-and-ordinary meaning has not been overcome.

Therefore, for the reasons described above, the undersigned finds that "internal region" in the '162 Patent should be construed according to its plain-and-ordinary meaning and will not construe the term.

ii.  **"Internal Threads"**

**Competing Positions**.  Defendant argues that, based on the specification and prosecution history, the disclaimer exception applies to the term "internal threads," so it should not be given its plain-and-ordinary meaning. (Def. Claim Constr. Br. [#20], at 24–26, 29.) The specification of the '162 Patent teaches that "to attach (or re-attach) the container lid to the container body the end portion of the neck of the container body is received within the internal region of the container lid so that the internal threads of the container lid are engaged with the external threads of the container body." ('162 Patent [#12-2], at 8:65–9:1–4 (quotation modified).) "[C]ontinued rotation of the container lid relative to the container body threads the container lid onto the container body via sliding engagement between internal threads of the container lid and the external threads of the container body." ('162 Patent [#12-2], at 9:14–19 (quotation modified).).

Defendant also points to the prosecution history. It asserts that a patent examiner initially rejected the patentee's claims as obvious. Specifically, the examiner determined a prior patent discloses a lid of a beverage container with "internal threads extend[ing] circumferentially around an inside surface of the second side wall of the container lid 1." (Def. Claim Constr. Br. [#20], at 25–26.) The patentee argued in response that the prior patent "does not engage an outside surface of the bottleneck, as required by amended claims 3, 6, 11, and 14." (Def. Claim Constr. Br. [#20], at 26 (emphasis in original).) The patentee further argued that the prior patent's sealing integrity was "afforded by virtue of engagement with the sealing strip." (Def. Claim Constr. Br. [#20], at 26 (emphasis in original).) Defendant thus contends that, based on the specification and the prosecution history, the patentee disavowed a broader meaning of "internal threads" and "made clear that the internal threads on the second side wall of the container lid

engage with the external threads of the neck of the container body."[10] (Def. Claim Constr. Br. [#20], at 26.) It suggests the construction: "Internal ridges extending spirally along the interior of the second side wall that engage with the external ridges of the container neck." (Def. Claim Constr. Br. [#20], at 29.)

Plaintiff did not respond to Defendant's disclaimer argument in its briefing. At the *Markman* hearing, Plaintiff argued that the way "internal threads" is used in the patent is not inconsistent with the plain-and-ordinary meaning of the term. Rather, it argued, Defendant was creating a dispute about the term "internal threads" by "defining [that] term as something . . . and then . . . apply[ing] [that definition] to another term."

**Ruling**. The undersigned agrees with Plaintiff that Defendant's proposed construction of the term "internal threads" does not set forth a definition of "internal threads" at all. Rather, Defendant's suggestion—"internal ridges extending spirally along the interior of the second side wall that engage with the external ridges of the container neck"—merely replaces the term "internal threads" with "internal ridges" and then applies that term to its larger context in the patent. In other words, the reason Defendant's proposed construction of "internal threads" differs from the term's plain-and-ordinary meaning is because Defendant's view of the term is too broad. Explaining that the internal threads attach to the external threads does not define *what the internal threads are* in the first place. For the same reason, the undersigned is not convinced that the specification and prosecution history with regards to "internal threads" show "clear and mistakable" disclaimer. *See Omega Eng'g, Inc.*, 334 F.3d at 1325–26. The phrases pointed to by Defendant in the specification and prosecution history do not clearly and unmistakably disclaim a meaning of "internal threads"; rather, they show how plain-and-ordinary internal threads relate

---

[10] During the *Markman* hearing, Defendant phrased this as the patentee disavowing "that the internal threads were located anywhere other than the interior of the second side wall."

to the other structures in the patent. That does not disavow the full scope of the phrase "internal threads" itself.

Therefore, for the reasons described above, the undersigned finds that "internal threads" in the '162 Patent should be construed according to its plain-and-ordinary meaning and will not construe the term.

### iii.  "Truncated" and "Spherical"

**Competing Positions**.  Defendant contends, based on claims 1, 10, and 21, the specification and drawings of the '955 Patent, and the specification, drawings, and prosecution history of the '296 Patent, a POSITA would understand the term "truncated" to mean "to cut off and replace with a flat, level or even surface." (Def. Claim Constr. Br. [#20], at 34.) Defendant requests that the Court give "truncated" that definition. Defendant's expert, Dr. Angele Sjong, provides an opinion regarding the meaning of "truncated" that restates Defendant's suggested construction, cites the '955 Patent itself, and cites to the definition of "truncated" in *Webster's New Twentieth Century Dictionary Unabridged* (2nd ed. 1983). (Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 23 & n.17.)

Defendant also contends that based on claims 1, 10, and 21, the specification and drawings of the '955 Patent, and the specification, drawings, and prosecution history of the '296 Patent, a POSITA would understand the term "spherical" to mean "shaped like a sphere or globe wherein the surface is equally distant from the center at all points." (Def. Claim Constr. Br. [#20], at 34–35.) Defendant asks the Court to give the term "spherical" that construction. Defendant's expert, Dr. Sjong, provides an opinion regarding the meaning of "spherical" that restates Defendant's suggested construction, cites the '955 Patent itself, and cites to the

definition of "sphere" and "spherical" in *Webster's New Twentieth Century Dictionary Unabridged* (2nd ed. 1983). (Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 24 & n.18.)

Additionally, Defendant discusses the prosecution history of the terms "truncated" and "spherical." (Def. Claim Constr. Br. [#20], at 30–33.) The patent examiner of the '955 Patent initially rejected certain claims related to the shape of the container body. (Amendment to '955 Claims [#21-12], at app. 2518–22.) After amending certain claims, the patentee described the container as having a "truncated spherical shape" and, citing the online *Merriam-Webster Dictionary*, stated that "[t]runcated means 'to shorten by or as if by cutting off." (*Id.* at app. 2520.) The patentee distinguished her own container from prior art ("O'Day"); the O'Day container had a spherical shape but "flat spots on the equator of the sphere," and thus was an "altered or distorted" sphere. (*Id.* at app. 2520–21.) The patentee, on the other hand, claimed a "'truncated spherical container' without mention of flat areas or an equator, such that the [patentee's] wall is understood as uninterrupted by flat areas or other accoutrements." (*Id.* at app. 2521.) Subsequently, in response to a later rejection based on different prior art ("Yoshida"), the patentee explained that she amended a claim to "more particularly point out and distinctly claim . . . that not only is the entire container truncated, but also the 'interior of the container body is a truncated spherical shape.'" (Amendment to '955 Claims [#21-12], at 2560.)

Plaintiff responds that the terms "truncated" and "spherical" should be construed together and should be given their plain-and-ordinary meaning. First and foremost, Plaintiff points out that these two terms are always used together in the '955 Patent's specification and claims, and construing "spherical" independently from the word "truncated" is unsupported by the intrinsic evidence. (Pl. Claim Constr. Br. [#32], at 12.) The full claim phrase in claims 1, 10, and 21 is "so that an interior of said container body has a *truncated spherical* shape." ('955 Patent [#12-1], at

18

4:6–7, 5:3–4, 6:24–25 (emphasis added).) Plaintiff argues that Defendant's proposed construction of "spherical"—a container "shaped like a sphere or globe wherein the surface is equally distant from the center at all points"—would exclude disclosed embodiments, such as Figure 7 of the '955 Patent. (Pl. Claim Constr. Br. [#32], at 13.)

Plaintiff also asserts that "spherical" and "truncated" need not be construed because there was no lexicography or clear and unmistakable disavowal. (Pl. Claim Constr. Br. [#32], at 13–14.) Plaintiff acknowledges that the patentee provided a definition for "truncated"—"to shorten by or as if by cutting off"—but it argues that this definition is based on, rather than inconsistent with, the plain-and-ordinary meaning of the term. (Pl. Claim Constr. Br. [#32], at 15–16.) It therefore contends that the patentee's definition of "truncated" was not lexicography.

Finally, Plaintiff claims that the prosecution history weighs against requiring a perfectly spherical shape, as the patentee specifically distinguished her invention from prior art that had an "entirely spherical interior." (Pl. Claim Constr. Br. [#32], at 14–15; Amendment to '955 Claims [#21-12], at app. 2561–62.)

**Rulings**.  First, the undersigned agrees with Plaintiff that "truncated" and "spherical" should not be construed separately, given that they are always used together in the patent. The "interpretation . . . given to a term can only be determined and confirmed with a full understanding of what the inventors actually invented," and a correct construction of a term is one that "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). *See also Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) (citing *Phillips*, 415 F.3d at 1323–24) ("In reviewing the intrinsic record to construe the claims, we strive to capture the scope of the

actual invention, rather than . . . allow the claim language to become divorced from what the specification conveys is the invention."). It would not be consistent with the "full understanding" of the '955 Patent to construe "truncated" and "spherical" separately, as the sphere being truncated—and not a perfect sphere—is "required to tether the claims to what the specifications indicate the inventor actually invented." *See Retractable Techs.*, 653 F.3d at 1305. Moreover, construing "spherical" to require a perfect sphere would exclude disclosed embodiments, such as Figure 7 in the '955 Patent. ('955 Patent [#12-1], at sheet 7 of 9.) *See In re Katz Interactive Call Processing Pat. Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) (citing *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005)) (explaining that "there is a strong presumption against a claim construction that excludes a disclosed embodiment").



Additionally, as Plaintiff argues, it would be inconsistent with the patent prosecution history to construe "spherical" as requiring a perfect sphere. The patentee distinguished her invention from an O'Day embodiment, which, unlike the container claimed in the '955 Patent, had an "entirely spherical interior." (Amendment to '955 Claims [#21-12], at app. 2561–62.) And though the patentee did also state that "altered or distorted areas" in another O'Day embodiment

are "unlike the ['955 Patent] container," such vague phrasing does not constitute a "clear and unmistakable disavowal" of *any* alteration or distortion. *See Thorner*, 669 F.3d at 1366–37. The undersigned will therefore not construe "spherical" separate from the term "truncated," and it should be given its plain-and-ordinary meaning without construction.

There is also no reason for the term "truncated" to be construed, either alone or in combination with the term "spherical." Defendant argues that the patentee engaged in lexicography by stating that "truncated" means "to shorten by or as if by cutting off." But the lexicography exception applies only when the patentee set forth a definition "*other than* its plain and ordinary meaning." *Thorner*, 669 F.3d at 1365 (emphasis added). The patentee, citing a general dictionary, gave "truncated" its plain-and-ordinary meaning. (Amendment to '955 Claims [#21-12], at app. 2520.) The undersigned will not apply the lexicography exception.

Finally, the undersigned does not give any weight to Defendant's expert's opinions on the meanings of "truncated" and "spherical," which cite only to the '955 Patent itself and a general dictionary. General dictionaries such as *Webster's Dictionary* may be used to clarify the ordinary meaning of claim language. *See Phillips*, 415 F.3d at 1314 (stating that "general purpose dictionaries may be helpful" when "claim construction . . . involves little more than the application of the widely accepted meaning of commonly understand words"). Her reliance on a general dictionary does the opposite of persuading the undersigned that these terms must be construed by the Court.

Therefore, for the reasons described above, the undersigned finds that "truncated" and "spherical" in the '955 Patent should be construed according to their plain-and-ordinary meanings and will not construe the terms.

iv. **"neck"**

**Competing Positions**.    Defendant contends, based on claims 1, 10, and 21, the specification of the '955 Patent, and the prosecution history of the '296 Patent, a POSITA would understand "neck" to mean "the narrow part of a container forming the container's mouth wherein spiral threads on the neck engage the lid." (Def. Claim Constr. Br. [#20], at 39–40.) Its brief also states that a POSITA would not understand the term "neck" to include the shoulder of the container body and that the '955 Patent does not disclose the neck as a part of the container body's side wall. (Def. Claim Constr. Br. [#20], at 36, 41.) Defendant relies on three images of a bottle in the extrinsic record[11] and on Dr. Sjong's opinion. (Def. Claim Constr. Br. [#20], at 40–41.) Dr. Sjong, citing the definition of "neck" in *Webster's New Twentieth Century Dictionary Unabridged* (2nd ed. 1983), restates Defendant's proposed construction for "neck" and describes it as how a POSITA would understand the term. (Decl. of Angele Sjong, PhD [#21-30], ¶ 25 & n.19.)

Regarding the prosecution history, Defendant argues the disavowal exception applies. It discusses that the patentee made amendments to the '955 Patent to include limitations that "the container body further comprises a circular neck extending vertically from the container side wall so that the container side wall extends between the circular and the horizontally-extending base." (Patentee Resp. [#21-12], at app. 2916.) The patentee also included the limitation that the "container side wall extends uninterruptedly between the circular neck and the horizontally-extending base." (Patentee Resp. [#21-12], at app. 2916.) Defendant argues that based on these statements and amendments by the patentee, the patentee "clearly and unequivocally disclaimed

––––––––––––––––––––

[11] The three images are the same relied upon by Defendant for its proposed construction of the term "neck" in the '162 Patent. *See* Section III(B), *supra*. (Appendix [#21-16], at app. 2991–92; Appendix [#21-19], at app. 3013–14.)

the inclusion of any other structure (for example, a shoulder) located between the neck and the container side wall." (Def. Claim Constr. Br. [#20], at 39.)

Lastly, at the *Markman* hearing, Defendant appeared to be arguing that there is a dispute over the scope of "neck," stating that "according to the plaintiff"—seemingly referring to Plaintiff's infringement contentions—"the term 'neck' includes the shoulder." Defendant therefore claimed that this is a situation in which the Court must construe "neck."

In response, Plaintiff argues that Defendant's proposed construction fails for three reasons: 1) Defendant mischaracterizes the prosecution history; 2) the prosecution history contains no clear and unequivocal disclaimer of claim scope; and 3) Defendant's proposed construction is not consistent with the alleged disclaimer. (Pl. Claim Constr. Br. [#32], at 16.)

**Ruling**.  The undersigned agrees with Plaintiff that "neck" in the '955 Patent does not need to be construed. Defendant argues that "neck" should be construed because the disavowal exception applies; it asserts that the patentee disclaimed the inclusion of any structure between the neck and container side wall, such as a shoulder. But courts are to construe terms when they are *not* given their plain-and-ordinary meaning, and Defendant's own expert—who cited only to a general dictionary for support—stated that a POSITA would ***already*** understand "neck" as not including a structure like a shoulder. (Decl. of Angele Sjong, PhD [#21-30], ¶ 25.) Claim construction is not "an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

Moreover, the undersigned disagrees with Defendant that this is a situation in which there are multiple ordinary meanings or a dispute over the scope of a claim term. *See O2 Micro*, 521 F.3d at 1361–62. Nothing in the '955 Patent or Plaintiff's claim construction briefing defines the term "neck" as including a shoulder. Rather, Defendant's sole basis for claiming that Plaintiff

believes the term "neck" includes the container body's shoulder is an infringement contention sent by Plaintiff to Defendant. And as discussed previously, infringement contentions are not yet at issue at this stage of the case. *See Eon Corp. IP Holdings*, 815 F.3d at 1319 (citing *Lazare Kaplan Int'l, Inc.*, 628 F.3d at 1376) ("[T]here are limits to the court's duties at the claim construction stage. For example, courts should not resolve questions that do not go to claim scope, but instead go to infringement . . . .").

Therefore, for the reasons described above, the undersigned finds that "neck" in the '955 Patent should have its plain-and-ordinary meaning and will not construe it.

**v.   "lip"**

**Competing Positions**.   Defendant contends, based on claims 1, 6, 10, 18, and 21, the specification of the '955 Patent, and the prosecution history of the '296 Patent, a POSITA would understand "lip" to mean the "outer upper edge of the neck that engages with the lid to provide a seal for the contents of the container." (Def. Claim Constr. Br. [#20], at 45–46.) It asserts, citing Figure 5 of the '955 Patent and Dr. Sjong's opinion, that the '955 Patent does not teach a lip containing threads. (Def. Claim Constr. Br. [#20], at 43; Decl. of Angele Sjong, Ph.D. [#21-30], ¶¶ 29–30.) Dr. Sjong's opinion cites the meaning of "lip" in *Webster's New Twentieth Century Dictionary Unabridged* (2nd ed. 1983) and a website's explanation of bottle anatomy.[12] (Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 29 n.23.) Dr. Sjong states that a POSITA would not understand the term "lip" to mean the neck of the container or the part of the container that includes threads. (Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 30.)

In addition, Defendant claims that the disavowal exception applies based on the prosecution history of the '296 Patent, a parent patent to the '955 Patent. Defendant asserts that

---

[12] Dr. Sjong's Declaration cites https://somewang.com/blog/parts-of-a-bottle-anatomy-explained-simple/. (Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 30 n.23.)

the patentee, in distinguishing the '296 Patent from prior art Yoshida and prior art O'Day, disclaimed that the lip of her claimed invention could include threads. (Def. Claim Constr. Br. [#20], at 43–45.) For instance, the patentee wrote that the O'Day container "must include a complementary thread, which cannot be positioned within the interior edges of a lip." (Amendments to '296 Patent [#21-12] at app. 2441.) Defendant contends that the patentee therefore disclaimed a lip with threads.

Plaintiff responds that there is no clear disavowal and that Defendant is mischaracterizing how the patentee distinguished her invention from O'Day and Yoshida. (Pl. Claim Constr. Br. [#32], at 21.) According to Plaintiff, the patentee distinguished her invention from O'Day and Yoshida by emphasizing that neither of those references spoke about a lid positioned within the interior edges of the lip. Plaintiff argues that a lip having threads and a lid being positioned within the interior edges of the lip are not mutually exclusive. As such, Plaintiff disputes that the patentee clearly and unmistakably disavowed a lip with threads. Additionally, Plaintiff argues that Defendant's proposed construction for "lip" has no relation to the disclaimer it alleges the patentee made.

**Ruling**.   The undersigned agrees with Plaintiff that this term should be construed in accordance with its plain-and-ordinary meaning. There is a heavy presumption in favor of the plain-and-ordinary meaning, and there is a high standard for the exceptions to this rule. *Thorner*, 669 F.3d at 1365–66. Where is it ambiguous whether a disclaimer was made, a court should not limit the term's ordinary meaning. *01 Communique Lab'y, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) (quoting *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005)). Here, it is not clear and unmistakable that the patentee distinguished her invention from the O'Day and Yoshida prior art due to her invention not having threads. Instead,

Plaintiff is correct that another reasonable interpretation is that the patentee distinguished her invention by it having a lid positioned within the interior edges of the lip; this interpretation says nothing about the inclusion or exclusion of threads. The disclaimer exception therefore does not apply.

Additionally, it again appears that Defendant is seeking a construction of "lip" based on Plaintiff's infringement contentions. Defendant's claim construction brief and expert's declaration state that a POSITA would not understand the term "lip" to mean the neck of the container or the part of the container that includes threads. (Def. Claim Constr. Br. [#20], at 46; Decl. of Angele Sjong, Ph.D. [#21-30], ¶ 30.) At the *Markman* hearing, Defendant contended that Plaintiff believes the "lip" includes the neck of the container. But—like with the term "neck"— nothing in the '955 Patent or Plaintiff's claim construction briefing supports that Plaintiff believes "lip" has that construction. As discussed before, the undersigned will not consider infringement contentions at this stage of the case. *See Eon Corp. IP Holdings*, 815 F.3d at 1319 (citing *Lazare Kaplan Int'l, Inc.*, 628 F.3d at 1376). And, as with the previously discussed terms, Defendant is asking the Court to give the term "lip" the construction that it claims a POSITA would ***already*** give the term. The undersigned thus sees no need for the Court to construe this term. Finally, as before, the undersigned assigns no weight to the general dictionary definition cited by Defendant and Dr. Sjong or to the random website cited by Dr. Sjong.

Therefore, for the reasons described above, the undersigned finds that "lip" in the '955 Patent should be construed according to its plain-and-ordinary meaning and will not construe the term.

## IV.     Conclusion

In conclusion, for the reasons described herein, the undersigned adopts the below constructions as its final constructions:

| Disputed Claim | Beverage Ranch's Proposed Construction | BuzzBallz's Proposed Construction | The Court's Construction |
|---|---|---|---|
| **side wall**<br><br>'162 Patent; Claims 1–8, 10, 15–19, 21 | One of two external surfaces forming either the container body or the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **first side wall**<br><br>'162 Patent; Claims 1–8, 10, 15–19, 21 | The external side surface forming the container body | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **second side wall**<br><br>'162 Patent; Claims 1, 10 | The external side surface forming the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **top wall**<br><br>'162 Patent; Claims 1, 8, 10, 21 | The top portion of the container lid comprising the central portion and the outer edge portion of the container lid, wherein the top wall is connected to the second side wall at the end portion of the second sidewall | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **external region**<br><br>'162 Patent; Claims 1, 7, 8, 10, 20, 21 | An exterior area of the lid defined by the radially-inwardly-facing external surface and the central portion of the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **neck**<br><br>'162 Patent; Claims 1, 7, 8, 10, 20, 21 | The narrow part of a container forming the container's mouth wherein spiral threads on the neck engage the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **lid** | A movable cover or top | No construction | No construction |

| | | | |
|---|---|---|---|
| '162 Patent; Claims 1, 7, 8, 10, 12–14, 20, 21 | for a container comprised of a side wall connected to a top wall | necessary, plain-and-ordinary meaning | necessary, plain-and-ordinary meaning |
| **radially-inwardly-facing external surface**<br><br>'162 Patent; Claims 1, 7, 8, 10, 20, 21 | A curved outer surface of the lid that faces towards the center of the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **axially**<br><br>'162 Patent; Claims 1–4, 10, 15–17 | In the direction of an imaginary straight line that passes through the center of an object | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **opposite**<br><br>'162 Patent; Claims 1, 10 | Set against and in a contrary position or direction | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **extending**<br><br>'955 Patent; Claims 1, 10, 21 | Stretching out | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **adjacent**<br><br>'955 Patent; Claims 1, 6, 10, 18, 21 | Having a common border or edge with the absence of anything in between | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **uninterruptedly**<br><br>'955 Patent; Claims 1, 10, and 21 | Not interrupted, stopped, or blocked | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **side wall**<br><br>'955 Patent; Claims 1, 6, 10, 18, 21 | The external surface of the container body, excluding the neck, shoulder, and base | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **internal region**<br><br>'162 Patent; Claims 1, 10 | An interior area of the lid defined by the combination of the second side wall, the top wall, and the security band wherein the end portion of the neck is received so the internal threads of the container lid are engaged with the external threads of the | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |

| | container neck | | |
|---|---|---|---|
| **internal threads**<br><br>'162 Patent; Claims 1 and 10 | Internal ridges extending spirally along the interior of the second side wall that engage with the external ridges of the container neck | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **truncated**<br><br>'955 Patent; Claims 1, 10, 21 | To cut off and replace with a flat, level or even surface | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **spherical**<br><br>'955 Patent; Claims 1, 10, 21 | Shaped like a sphere or globe wherein the surface is equally distant from the center at all points | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **neck**<br><br>'955 Patent; Claims 1, 6, 10, 18, 21 | The narrow part of a container forming the container's mouth wherein spiral threads on the neck engage the lid | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |
| **lip**<br><br>'955 Patent; Claims 6, 18 | The outer upper edge of the neck that engages with the lid to provide a seal for the contents of the container | No construction necessary, plain-and-ordinary meaning | No construction necessary, plain-and-ordinary meaning |

SIGNED this 29th day of August, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE